In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00148-CR


______________________________




TOMMY WALTER DARLING, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 8th Judicial District Court


Hopkins County, Texas


Trial Court No. 0518218




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Moseley



O P I N I O N



 The previous ruling in this case as decided on August 13, 2008, (1) is withdrawn and this
opinion is rendered in its stead. 

 Tommy Walter Darling appeals his conviction for aggravated sexual assault of a child. This
case was consolidated and tried with three other cases in which Appellant was charged with
aggravated sexual assault of a child and one other case in which he was charged with indecency with
a child. This appeal raises several issues. For the reasons set forth below, we find no reversible error
in this case and affirm the trial court's judgment.

Factual and Procedural Background

 Twelve indictments were returned against Appellant for the charges of aggravated sexual
assault and indecency with a child; the charges involved three different child victims, and the crimes
occurred on several different dates. Two of the three victims were molested in the early and mid-1990s; the third victim was abused in December 2004. Darling initially asked the trial court to sever
each charge from the trial of the others, thereby creating the potential for twelve individual trials. 
See generally Tex. Penal Code Ann. § 3.04 (Vernon Supp. 2008). At the hearing on the severance
motion, Appellant agreed that the early and mid-1990s allegations (involving two different victims)
should be tried together. He did, however, continue to assert that the early 1990s charges should be
tried separately from the 2004 crime. Ultimately, the trial court denied the severance motion in its
entirety and permitted the State to prosecute all twelve cases as part of a single proceeding. 

 Before submitting the case to the jury, the State elected to have only five of the twelve
charges sent to the jury for determination of guilt/innocence. The jury found Appellant guilty of
aggravated sexual assault of a child in four of those cases and guilty of indecency with a child by
contact in the fifth case. After hearing evidence regarding punishment, the jury assessed Appellant's
punishment at imprisonment for life and a $10,000.00 fine on the aggravated sexual assault charges
and at twenty years' imprisonment and a fine of $10,000.00 in the indecency with a child case. 

Denial of Severance Motion

 In his first three points of error, Appellant contends that the trial court erred by failing to
grant his motion to sever the various charges leveled against him (issues 1 and 2) and that he was
unfairly prejudiced by such joinder (issue 3). The State claims Appellant failed to preserve these
precise issues for appeal. Alternatively, the State contends Appellant waived this issue as it relates
to this case. 

 (A) The Severance Statute

 Under certain circumstances, our law permits courts to sever the trials of a defendant facing
multiple charges. The current applicable provision of the Texas Penal Code provides:

 (a) Whenever two or more offenses have been consolidated or joined for
trial under [Penal Code] Section 3.02, the defendant shall have a right to severance
of the offenses.

 

 (b) In the event of severance under this section, the provisions of Section
3.03 do not apply, and the court in its discretion may order the sentences to run either
concurrently or consecutively.

 

 (c) The right to severance under this section does not apply to a
prosecution for offenses described by [Penal Code] Section 3.03(b) unless the court
determines that the defendant or the state would be unfairly prejudiced by a joinder
of offenses, in which event the judge may order the offenses to be tried separately or
may order other relief as justice requires.


Tex. Penal Code Ann. § 3.04. The right to a severance under the current version of Section 3.04
is absolute, except for joinder of sexually based offenses that are governed by Section 3.03 of the
Texas Penal Code. See Scott v. State, 235 S.W.3d 255, 257-58 (Tex. Crim. App. 2007) (analyzing
applicable exceptions to mandatory severance). Section 3.03 concerns sentences for offenses arising
out of the same criminal episode. See Tex. Penal Code Ann. § 3.03 (Vernon Supp. 2008). 
Additionally, if an accused waives that severance right, or if the defendant fails to request a
severance, the joinder and prosecution of multiple indictments in a consolidated trial is permissible. 
Milligan v. State, 764 S.W.2d 802, 803 (Tex. Crim. App. 1989); Johnson v. State, 509 S.W.2d 322,
323 (Tex. Crim. App. 1974). For purposes of whether to sever the trials under the current Texas
Penal Code, the term "criminal episode" means either "the offenses [sought to be joined] are
committed pursuant to the same transaction or pursuant to two or more transactions that are
connected or constitute a common scheme or plan" or "the offenses [sought to be joined] are the
repeated commission of the same or similar offenses." Tex. Penal Code Ann. § 3.01 (Vernon
2003). 

 However, the current version of Section 3.04 applies only to crimes that were committed
after September 1, 1997, the effective date of the current statute. See Act of May 21, 1997, 75th
Leg., R.S., ch. 667, § 3, 1997 Tex. Gen. Laws 2250, 2252 (effective Sept. 1, 1997) (amended 2005)
(current version at Tex. Penal Code Ann. § 3.04). Most of the criminal acts with which the
Appellant was charged occurred before 1997; only one occurred after 1997.

 The prior version of Section 3.04 provided:

 (a) Whenever two or more offenses have been consolidated or joined for
trial under Section 3.02 of this code, the defendant shall have a right to a severance
of the offenses.

 

 (b) In the event of severance under this section, the provisions of Section
3.03 of this code do not apply, and the court in its discretion may order the sentences
to run either concurrently or consecutively.

Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 891 (effective Jan. 1,
1974) (amended 1993, 1997, and 2005) (current version at Tex. Penal Code Ann. § 3.04). This
older version of Section 3.04 applied during the period lasting from January 1, 1974 to August 31,
1997. See id. Additionally, between 1974 and August 31, 1997, Section 3.03 provided, "When the
accused is found guilty of more than one offense arising out of the same criminal episode prosecuted
in a single criminal action, sentence for each offense for which he has been found guilty shall be
pronounced. Such sentences shall run concurrently." Act of May 24, 1973, 63rd Leg., R.S., ch. 399,
§ 1, 1973 Tex. Gen. Laws 883, 891 (effective Jan. 1, 1974) (amended 1993, 1997, and 2005) (current
version at Tex. Penal Code Ann. § 3.04). This prior version of Section 3.04 lacked the sex offense
exceptions to severance that appear in the current statute. Compare Act of May 24, 1973, 63rd Leg.,
R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 891 (amended 1993, 1997, and 2005), with Tex.
Penal Code Ann. § 3.04.

 Appellant now contends a severance for all his cases was mandatory because all but one of
those charges were governed by the pre-1997 mandatory severance version that did not include the
sex-offense exception currently found in Section 3.03. Yet, such argument ignores the fact that
Appellant agreed at trial that the charge in the current case should be tried together with the
remaining charges of aggravated sexual assault, given the close temporal proximity of those charges. 
After making this concession, Appellant's sole remaining objection was to having those cases tried
with the charge of indecency with a child charge stemming from conduct in 2004. 

 By agreeing to the joinder of the four aggravated sexual assault charges, Appellant waived
his first, second, and third points of error with respect to the joint trial of those cases. Thus, the issue
that remains is whether the trial court erred by permitting joinder of the 2004 indecency charge with
the aggravated sexual assault charges. (2) 

 (B) The Trial Court Should Have Severed the Indecency Case from the Other
Charges


 If two or more offenses are joined under Section 3.02, the accused nonetheless has the right
to have separate trials of those offenses. Tex. Penal Code Ann. § 3.04(a). As noted above, and
under the version of the severance statute applicable to Appellant's charges of aggravated sexual
assault of a child (which occurred before 1997), Appellant had an absolute right to have a different
jury determine his guilt in the current case than the jury that determined his guilt in the 2004
indecency case. See Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883,
891 (amended 1993, 1997, and 2005). Accordingly, we conclude the trial court erred by failing to
have the 2004 indecency charge tried separately from the allegations of aggravated sexual assault
of a child. Cf. Llamas v. State, 12 S.W.3d 469, 470 (Tex. Crim. App. 2000) (citing Warmowski v.
State, 853 S.W.2d 575, 581 (Tex. Crim. App. 1993)). 

 "A trial judge's failure to grant a mandatory severance under Section 3.04 is subject to a harm
analysis, and the error is harmless if it did not adversely affect the defendant's substantial rights." 
Scott, 235 S.W.3d at 257 (citing Llamas, 12 S.W.3d at 470; and referencing Tex. R. App. P.
44.2(b)); see also Llamas v. State, 991 S.W.2d 64, 68 (Tex. App.--Amarillo 1998), aff'd, 12 S.W.3d
469 (Tex. Crim. App. 2000). "Substantial rights are not affected 'if the appellate court, after
examining the record as a whole, has fair assurance that the error did not influence the jury, or had
but slight effect." Owens v. State, 135 S.W.3d 302, 310 (Tex. App.--Houston [14th Dist.] 2004, no
pet.); see also Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). "To judge the
likelihood that harm occurred, appellate courts must consider everything in the record including all
the evidence admitted at trial, the closing arguments, and . . . the jurors' comments during voir dire." 
Scott, 235 S.W.3d at 257 (quoting Llamas, 12 S.W.3d at 471); see also Cain v. State, 947 S.W.2d
262, 264 (Tex. Crim. App. 1997) (requiring appellate harm analysis when trial court erred by
denying severance motion). 

 (C) The Severance Denial Did Not Result in Reversible Error

 The record contains significant evidence to support the jury's finding of guilt in this case. 
The indictment alleged that Appellant,

 on or about the 11th day of February, 1992, and before the presentment of this
indictment, in said County and State, did then and there intentionally or knowingly cause the penetration of the sexual organ of . . . a child who was then and [there] younger
than 14 years of age and not the spouse of the defendant, by the defendant's finger.


The named victim in this case (who was sixteen years old at the time of trial) testified that when she
was much younger, she would sometimes spend the night at Appellant's house. She testified that
Appellant would touch her inappropriately at night after she fell asleep. She would wake up during
these assaults, which involved Appellant putting his finger inside her panties, touching her genital
area, and putting his finger inside her genitals. She told the jury that she endured the contact each
time for "a pretty long time." The victim testified that Appellant molested her every time she spent
the night at his house. She eventually made an outcry to her great-grandmother, Jane Green,
regarding the abuse. (3) The victim's testimony made it clear that the abuse occurred more than ten
years earlier, at a time when she would have been younger than fourteen years of age. 

 The jury also heard from the victim's older sister, who was herself molested in the same way
as the victim in this case. (4) This older sister, who was eighteen at the time of trial, testified that when
she was much younger, she would spend the night at Appellant's house. According to her, after she
had gone to sleep in the same bed as Appellant and his wife, Appellant would

 put his fingers -- he would, like, rub his finger around and then put his finger inside
me (sobbing). And sometimes I would move his hand, and he would just put it right
back. And I'd move his hand again and he would just keep on moving it back. We
were wanting him to stop (sobbing). That's what he did whenever we spent the night
over there.


This sister later testified that the molestation by Appellant occurred on more than five different
occasions. One of those occasions occurred when this older sister was but nine years of age, and of
which she offered the following description of events:

 [H]e kept putting his hand, and it was hurting so bad, and I would move his hand, and
he would just put it back, like right back. He would just keep on and on and on, and
he just kept on moving his hand, and I kept on moving it back over to the right, and
he just kept on doing it, kept on doing it. And I just remember wanting him to stop,
because it hurt (sobbing).


The sister later talked to the victim in this case about being molested by Appellant; it was during this
discussion that both girls first learned that the other had been sexually abused in the same way by
Appellant. The two then went to their great-grandmother to tell her about the sexual abuse. 

 Green testified that when the victim in this case would sometimes spend the night at Green's
house, and while the victim was taking her bath, she would sometimes "holler" in pain. Green
explained that the victim later told Green that the hot water made the victim's sexual organ feel as
if it were burning. Green asked the victim to show her the hurting area, and the victim complied. 
Green said the young girl's sexual organ appeared "red, rubbed red, raw-looking." Green initially
thought the victim's inflamed sexual organ was the result of a kidney infection or some other
common illness. But she later learned that those injuries were the result of the victim being sexually
molested by Appellant. The victim was still in kindergarten at the time of this particular incident. 
Green further noted that the victim's older sister had expressed similar feelings of burning and pain
in her sexual organ while taking baths at Green's house. Eventually the victim and her older sister
came to Green in 1995, both telling Green that Appellant had been molesting them. 

 In closing arguments, the State reviewed (1) the evidence supporting Appellant's conviction
in this case, (2) the evidence supporting Appellant's conviction in the second case involving the same
victim, (3) the evidence supporting Appellant's conviction in the two remaining cases in which this
victim's older sister was alleged to have been sexually assaulted, and (4) the evidence that the State
claimed would support Appellant's conviction in the 2004 indecency charge. The thesis of the State's
argument was quite simple: If the jury believed the victims were telling the truth, it should find
Appellant guilty. The State then presented the jury with several arguments as to why it should find
the victims' testimonies to be credible. 

 In his closing argument, Appellant argued that the State had failed to prove its case beyond
a reasonable doubt in each of the five cases. He asserted that merely because the State brought forth
five allegations, such a quantity of accusations did not absolve the State from its burden to bring
forth proof to substantiate each allegation; it was not enough for the jury merely to conclude
Appellant was guilty based solely on the quantity of charges brought forth by the State rather than
on evidentiary merit. 

 While Appellant's closing argument touched on each of the charges and the credibility of the
named victims, he focused primarily on the 2004 indecency charge and the lack of credible evidence
in that specific case. His discussion of the propriety of the aggravated sexual assault allegations was
limited, and he made only a few references as to why the jury should find the victims' testimonies
in those cases to be incredible.

 Finally, while the briefs of neither party directed our attention to any portion of the 315-page
portion of the record for voir dire that would have been relevant to analyzing this issue of harm, (5) we
have independently reviewed the entirety of the voir dire proceedings and have concluded that none
of the jurors' answers during voir dire support the proposition that Appellant suffered harm based
on the trial court's erroneous denial of the severance motion. (6) In fact, all those prospective jurors
who were specifically asked about such during voir dire promised to hold the State to its burden of
proof and not vote to convict Appellant merely because he faced multiple charges within a single
proceeding. Contrast Llamas, 12 S.W.3d at 471-72 (several jurors expressed concern during voir
dire about fact that accused faced multiple charges within single proceeding).

 Therefore, after reviewing the entire record (including all the evidence admitted at trial,
closing arguments from both sides, and voir dire), we can say with fair assurance that the trial court's
erroneous denial of Appellant's motion to sever the older charges for aggravated sexual assault from
the 2004 indecency charge did not impact Appellant's substantial rights. Accordingly, we overrule
Appellant's first three points of error. (7)

Solicitation of Testimony that Appellant Had Been Offered a Polygraph Test

 In the only remaining issue relevant to the trial court's judgment in this case, Appellant
contends the trial court erred by permitting both Henry Turner (an investigator with the Hopkins
County Sheriff's Department) and Russell Stillwaggoner (a lieutenant with the Sulphur Springs
Police Department) to testify that Appellant had been offered a polygraph examination. The results
of a polygraph examination are generally inadmissible for any reason because such testing is
inherently unreliable. See, e.g., Robinson v. State, 550 S.W.2d 54, 59 (Tex. Crim. App. 1977); Harty
v. State, 229 S.W.3d 849, 851 n.2 (Tex. App.--Texarkana 2007, pet. ref'd).

 Appellant admits that the witnesses never used the word "polygraph" to describe the testing
offered. He does, however, argue that the State's line of questioning allowed the jurors to infer
Lieutenant Stillwaggoner had offered a polygraph or similar "lie detector" test to the Appellant,
which was improper. 

 In this case, none of the witnesses ever used the word "polygraph" or the phrase "lie detector
test" to describe the "additional scientific testing" that was ostensibly offered to Appellant. Nor did
any of the witnesses affirmatively testify that Appellant refused to take such a polygraph
examination. Nor did the State seek to admit the results of this nonexistent polygraph examination. 
And it is at least possible that given the context of the testimony, the trial court could have concluded
these witnesses were referring to any other of a various assortment of scientific testing such as DNA
testing, X-ray testing, or blood glucose testing. To presume anything more based on the appellate
record would require us to resort to the rankest of speculation. Accordingly, we cannot say the
record before us supports the conclusion that the trial court abused its discretion. We overrule this
point of error.

Conclusion

 Appellant raises no other issues that are relevant to the trial court's judgment in this case.
Accordingly, for the reasons stated, we conclude Appellant has not demonstrated that reversible error
occurred in the trial of this case. 

 We therefore affirm the trial court's judgment.




 Bailey C. Moseley

 Justice


Date Submitted: April 2, 2008

Date Decided: September 10, 2008


Publish
1. Darling v. State, No. 06-06-0014-CR, 2008 Tex. App. LEXIS 6108 (Tex. App.--Aug. 13,
2008, no pet. h.).
2. We remind all trial courts that they must make a special effort to carefully review severance
motions in all cases involving multiple charges of sexually based offenses. These specialized
motions require an intensive review of the allegations involved. Trial courts would be wise to use
the offense date(s) alleged in the indictment(s) to identify correctly the applicable severance law(s)
in effect on the date of that alleged offense. And both sides of the bar must provide the bench with
better assistance in identifying and applying the applicable severance statute(s). Such concerted
effort by all parties will benefit the bench, the bar, the victims, and the trial witnesses by hopefully
decreasing the likelihood that the trial court is led perilously close to the abyss of reversal through
an inadvertent--but nonetheless erroneous--joinder.
3. Though the great-grandmother timely reported this outcry of abuse, state officials in 1995
did not, for whatever reason, take subsequent steps to investigate and/or prosecute the Appellant.
4. Two of Appellant's companion appeals concern convictions for aggravated sexual assault
of a child wherein the named victim was this older sister.
5. See Tex. R. App. P. 38.1(h) (appellant's brief must contain appropriate citations to record),
38.2 (same); Ledbetter v. State, 208 S.W.3d 723, 735-36 (Tex. App.--Texarkana 2006, no pet.).
6. During voir dire, the State asked the prospective jurors to require the State to prove each
charge beyond a reasonable doubt and to not convict Appellant merely based on the quantity of
charges. None of the prospective jurors said they would lessen the State's burden merely because
Appellant faced multiple charges of sexually based offenses. 
7. Cf. Scott, 235 S.W.3d at 259-61 (no allegation defensive strategy would have been different
absent improper joinder; different juries would have likely learned of extraneous conduct anyway);
Husley v. State, 211 S.W.3d 853, 858 (Tex. App.--Waco 2006, no pet.) (record did not demonstrate
harm inasmuch as appellant's defense to each charge was same: that victim was lying).



onnecttype="rect"/>
 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00077-CR

                                                ______________________________

 

 

                                     GAYLOR STINER,
JR., Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                      On Appeal from the 402nd
Judicial District Court

                                                             Wood County, Texas

                                                       Trial Court
No. 20,451-2008

 

                                                     
                                             

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            Gaylor
Stiner, Jr., appeals from his jury conviction of aggravated assault with a
deadly weapon.  Tex. Penal Code Ann. § 22.02 (Vernon Supp. 2009).  Stiner pled true to the enhancement
paragraphs alleged in the indictment and was sentenced as a habitual offender
to fifty years imprisonment and a $1,000.00 fine.  Tex.
Penal Code Ann. § 12.42 (Vernon Supp. 2009).  Stiner was represented by appointed counsel
at trial and on appeal.  Stiners
attorney has filed a brief in which he concludes that the appeal is frivolous and
without merit, after a review of the record and the related law.

            Counsel
states that he has studied the record and finds no error preserved for appeal
that could be successfully argued.  The
brief contains a professional evaluation of the record and advances six
arguable grounds for review.  This meets
the requirements of Anders v. California,
386 U.S. 738 (1967); Stafford v. State,
813 S.W.2d 503 (Tex. Crim. App. 1991); and High
v. State, 573 S.W.2d 807 (Tex. Crim. App. [Panel Op.] 1978).

            Counsel
mailed a copy of the brief to Stiner August 3, 2009, informing Stiner of his
right to examine the entire appellate record and to file a pro se
response.  Counsel simultaneously filed a
motion with this Court seeking to withdraw as counsel in this appeal.  Stiner filed his response January 4, 2010.

            We
have determined that this appeal is wholly frivolous.  We have independently reviewed the clerks
record and the reporters record, and we agree that no arguable issues support
an appeal.  See Bledsoe v. State, 178 S.W.3d 824, 82627 (Tex. Crim. App.
2005).  In a frivolous appeal situation,
we are to determine whether the appeal is without merit and is frivolous, and
if so, the appeal must be dismissed or affirmed.  See
Anders, 386 U.S. 738.   

            We
affirm the judgment of the trial court.[1]

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

Date Submitted:          January
27, 2010         

Date Decided:             January 28, 2010

Do Not Publish           

 

 











[1]Since
we agree this case presents no reversible error, we also, in accordance with Anders, grant counsels request to
withdraw from further representation of Stiner in this case.  No substitute counsel will be appointed.  Should Stiner wish to seek further review of
this case by the Texas Court of Criminal Appeals, Stiner must either retain an
attorney to file a petition for discretionary review or Stiner must file a pro
se petition for discretionary review. 
Any petition for discretionary review must be filed within thirty days
from the date of either this opinion or the last timely motion for rehearing
that was overruled by this Court.  See Tex.
R. App. P. 68.2.  Any petition for
discretionary review must be filed with this Court, after which it will be forwarded
to the Texas Court of Criminal Appeals along with the rest of the filings in
this case.  See Tex. R. App. P.
68.3.  Any petition for discretionary
review should comply with the requirements of Rule 68.4 of the Texas Rules of
Appellate Procedure.  See Tex.
R. App. P. 68.4.